**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

**In re:**

**South Brunswick Water**
**and Sewer Authority,**                                    Case No. 04-09053-8-JRL

      **Debtor.**

**ORDER**

This matter comes before the court on the Unsecured Creditors Committee (the Committee)'s motion for an order authorizing the Committee or appointing a trustee to bring avoidance actions under 11 U.S.C. § 926. A hearing was held on June 28, 2005 in Wilson, North Carolina.

The Debtor, South Brunswick Water & Sewer Authority (SBWASA), filed for relief under Chapter 9 of the Bankruptcy Code on November 19, 2004. The debtor is a defunct water and sewer authority, and the North Carolina Local Government Commission (LGC) is overseeing its financial affairs. In November, 2003, the Debtor's financial operations were taken over by the LGC and most of the debtor's assets were transferred prior to the petition date. The Committee was appointed by this court on December 23, 2004 and since that time has been investigating the transfers made by the debtor. Pursuant to 11 U.S.C. § 926, the Committee seeks the appointment of a trustee in this case to pursue a cause of action under sections 544, 545, 547, 548, 549(a) or 550 if the debtor refuses to pursue such a cause of action to recover avoidable transfers.

The primary transfer that the Committee seeks to challenge is the April 30, 2004 transfer of a sewer package plant and related infrastructure from the debtor to Brunswick County. As consideration for the purchase, the county paid a revenue bond due to BB&T in the amount of $1.05 million, assumed an obligation of the debtor to Sea Trails to permit 403 tap fees, and agreed to continue to

provide service to customers. The Committee asserts that the transfer of the sewer package plant to the county violated § 548 because the transfer was six months prior to the petition date, was for less than reasonably equivalent value, and the debtor was rendered insolvent.

In response, the debtor asserts that it received reasonably equivalent value for the transaction in light of all of the surrounding circumstances. The debtor did not own the real property on which the sewer plant was located, thereby limiting the value of the sewer plant assets. Also, there was no way to expand the plant as it was operating at capacity, and the amount of income generated by the sewer plant was insufficient to support the capital expenditures which were needed to meet the plant's future obligations.

The debtor further believes that this transfer in not avoidable as Chapter 9 prevents a bankruptcy court from interfering with property of the debtor or the debtor's exercise of its governmental powers. The debtor cites N.C.G.S. § 160A-274 for the proposition that a governmental unit is authorized to transfer property to another governmental unit "upon such terms and conditions as it deems wise, with or without consideration." Thus, the debtor asserts that finding this transfer to be constructively fraudulent under § 548 would require the court to interfere with the debtor's exercise of its governmental powers.

Finally, the debtor asserts that any action brought against the state of North Carolina or the LGC as an arm of the state would be barred by the Eleventh Amendment. Sovereign immunity bars claims against a state in federal court, and neither the debtor nor a trustee could bring an action against the state of North Carolina for any allegedly wrongful conduct in the oversight of the debtor's activities.

At the hearing, the court heard testimony as to the value of the sewer package plant. Financial consultant Leta Hals presented the court with two methods of valuing the plant, based on the sales of

other sewer plants since 1994. In the first valuation, the comparable sales show the net utility plant value and the sales price as a multiple of net utility plant value. Based on this information as applied to the net utility plant value of the sewer package plant of $7,058,418, the median value of the sewer package plant would be $7,876,798 and the mean would be $9,302,985. In the second valuation, the comparable sales show the plant revenues and the sales price as a multiple of plant revenues. Based on this information as applied to the revenues of the sewer package plant of $815,803 including impact fees, the median value of the sewer package plant would be $2,975,890 and the mean would be $3,328,761. Without impact fees, the plant revenues drop to $445,958, the median value drops to $1,626,768 and the mean drops to $1,819,664.

Based on the record here, the difficult legal issues are largely resolved in favor of the Committee. The party to the agreement is Brunswick County and not the LGC, so the Eleventh Amendment is not involved here. 11 U.S.C. § 904 is not implicated because the proposed action would not seriously impact the ongoing operation of the debtor. The court does not so broadly read N.C.G.S. § 160A-274 as authorizing intragovernmental immunity from any sort of challenge, given the primacy of federal law that clearly applies here.

However, in order to grant this motion, the court must find that the debtor has made a colorable showing that it did not receive reasonable value considering all of the circumstances of the exchange, and that is not the case here. The testimony of Ms. Hals provided two different methodologies as to the valuation of the plant. Taking her lower methodology, which is justified because without the impact fees the debtor was actually losing money, she places the value of the plant at $1.6 million to $1.8 million. Ms. Hals further testified that she did not realize that the land was not included. Some of the purchase price would have to be allocated to Sea Trail because purchasing this plant would make no sense

3

unless the buyer acquired the land on which it sat.  Further, there had been a wave of negative publicity about SBWASA in this area that would have chilled any investor who was looking at it.

More importantly, the court is persuaded after reviewing the exhibits that the county assumed a liability for the flow permits that the debtor had issued that was not illusory.  Given the testimony from the hearing, the court finds that the liability exceeded the remaining value of the transferred property.  The debtor had largely spent the impact fees that should have gone to capitalize the expansion to meet its future requirements.  Without the impact fees, there was no money with which the debtor could expand.  Nonetheless, it was left with the legal obligation to either expand or pay damages to developers with permits for its inability to do so.  The fact that Brunswick County took over that liability added enough value to their consideration that the court cannot determine that there was not a reasonable exchange.  Unable to make that finding, the provisions of 11 U.S.C. § 904 are not triggered.  The court will not require a trustee to be appointed.  This is an estate of limited assets, and appointing a trustee would require another attorney to examine the situation, make conclusions at the debtor's expense, and possibly bring a lawsuit funded on both sides by the debtor.  The requisite showing has not been made.  The Committee's motion is hereby denied.

**So Ordered.**
**Dated:  July 5, 2005**

J. Rich Leonard
United States Bankruptcy Judge